**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Jorge Rafael Miranda, ) | No. CIV 14-2327-TUC-LAB |
| Plaintiff, ) | **ORDER** |
| vs. ) |  |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) |  |
| Defendant. ) |  |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 10)

The court finds the final decision of the Commissioner must be reversed. The ALJ's finding at step two of the disability analysis that Miranda's shoulder impairment and back impairment are not "severe" is not supported by substantial evidence. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The case will be remanded for further proceedings.

PROCEDURAL HISTORY

Miranda filed his application for disability insurance benefits and supplemental security income on July 6, 2012. (Tr. 19) He alleged disability beginning on April 30, 2012, due to left shoulder injury, ruptured shoulder tendon, arthritis, osteoporosis, high blood pressure,

cholesterol, acid reflux, and diabetes. (Tr. 19, 166) His claim was denied initially (Tr. 80-87) and upon reconsideration (Tr. 88-94). Miranda requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Norman R. Buls on February 12, 2014. (Tr. 32) In his decision, dated March 7, 2014, the ALJ found Miranda is not disabled because he has no severe impairments. (Tr. 19-25)

Miranda appealed and submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4); *see Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Miranda subsequently filed this action appealing the Commissioner's final decision. (Doc. 1) He argues the ALJ erred in finding his shoulder impairment, right elbow impairment, and low back impairment are not "severe." (Doc. 13)

Claimant's Work History and Medical History

At the time of the hearing, Miranda was 60 years old. (Tr. 32-33) He has a sixth grade education. (Tr. 34) He can understand some English, but he is not fluent. (Tr. 34)

Miranda worked as a laborer in a plastering company and as a cleaner in a cement plant. (Tr. 167) In his job as cleaner, he frequently lifted objects weighing 50 pounds or more. (Tr. 189) Miranda was laid off in June of 2008. (Tr. 166) Since that time, he has had surgery on his left shoulder and a laminectomy in his back. (Tr. 37) Miranda maintains that pain in his arms, shoulder, and waist prevent him from lifting more that ten pounds at a time. (Tr. 40)

Physical Impairments

Miranda first injured his shoulder in 1999 when he fell at work. (Tr. 262, 388) He suffered intermittent symptoms until February of 2012 when he aggravated his injury while trimming trees. (Tr. 388) R. W. Wood, M.D., noted "[t]he MRI study shows a small full thickness supraspinatus rotator cuff tear." (Tr. 91) He recommended that Miranda ice and rest his shoulder. *Id.* He briefly discussed rotator cuff surgery. *Id.*

1  In April of 2012, the medical record indicates that a corticosteroid injection to Miranda's left shoulder was only partially beneficial. (Tr. 384) Wood assessed "rotator cuff tear - small-moderate, chronic." (Tr. 386) He referred Miranda to a course of physical therapy. In June of 2012, Wood noted that "injection and therapy have not been helpful," and Miranda was "taking Percocet four times a day for pain." (Tr. 380)

X-ray studies were performed in June of 2012. (Tr. 378) George R. Bradbury, M.D., assessed "rotator cuff tear - large-massive, chronic." (Tr. 378) In July of 2012, Bradbury performed a "left shoulder open rotator cuff repair and subacromial decompression." (Tr. 232)

The medical record documents Miranda's post operative treatment. (Tr. 364, 368, 371, 373) Miranda reported improvement, but he still had pain and swelling two months after surgery. (Tr. 368)

In September of 2012, Miranda was examined by Melvyn Weinberg, M.D., for the state disability determination service. (Tr. 309) Weinberg diagnosed "rotator cuff derangement of the left shoulder with recent surgical repair and continued pain and decreased motion plus regular Oxycodone use; recent muscle injury of the left posterior thigh with possible partial tear which occurred in the last week; diabetes mellitus; and flexion deformity of the right elbow, long-standing." (Doc. 310)

Weinberg completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 312) He opined Miranda could lift or carry less than 10 pounds frequently and up to 10 pounds occasionally. *Id.* He documented no standing, walking, or sitting limitations. (Tr. 312-13) He opined Miranda should only occasionally climb ladders, rope, or scaffolds; stoop, kneel; crouch; crawl; reach; handle; finger; or feel. (Tr. 313) He noted further restrictions on working around heights and around moving machinery. *Id.*

In December of 2012, Miranda still had left shoulder pain, which was aggravated by movement. (Tr. 360) Treatment notes dated February 28, 2013 indicate Miranda still has left shoulder pain which is aggravated by lifting and movement. (Tr. 352)

In March of 2013, Allan Jones, P.T., assessed chronic left shoulder pain. (Tr. 424) He noted Miranda could not lift his hand above his head. *Id.* Miranda's short term goal for therapy

- 3 -

1  was to decrease shoulder pain to a 6 out of 10. *Id.* His long term goal was to decrease shoulder
2  pain to a 3 out of 10. *Id.*

3        In July of 2013, Miranda fell in the shower and hurt his back. (Tr. 532) In October of
4  2013, Miranda was still complaining of severe back pain. (Tr. 532) MRI studies of Miranda's
5  back were taken in November of 2013. (Tr. 536) Nicholas Fraley, M.D., noted "moderate to
6  severe degenerative spinal stenosis at L4-L5 due to disc bulge . . . ." (Tr. 536)

7        Miranda underwent an L4 and L5 decompressive laminectomy on December 17, 2013.
8  (Tr. 539, 543) Kurt A. Schroeder, M.D., reported the "surgery went well, the patient did well,
9  anesthesia went well." (Tr. 539)

10        In December of 2013, Miranda reported he was recovering well from his back surgery
11  (Tr. 542) His gait was stable, but he was still using a cane. (Tr. 542) Treatment notes from
12  January of 2014 indicate Miranda was still suffering from chronic low back pain. (Tr. 563) In
13  February of 2014, Miranda still felt pain in the lower back with bending. (Tr. 559)

14        In February of 2014, Miranda appeared with counsel before the ALJ. (Tr. 30) He
15  testified through an interpreter. *Id.* Miranda explained he used to work with jack hammers and
16  chipping hammers. (Tr. 40) He had to lift objects weighing 60 pounds. (Tr. 40) He explained,
17  "And it was hard, and my hands used to end up stiff because of the kind of tools that I used to
18  work with." (Tr. 40) He explained he can no longer return to work "[b]ecause of the problems
19  I have in my arms and my shoulder and my waist." (Tr. 40) "I cannot lift anything overhead;
20  I get tired; [a]nd I cannot do much movements for more than one hour." (Tr. 40)

21        In March of 2014, Miranda complained of shoulder and back pain after performing two
22  hours of landscaping work. (Tr. 549)

23        The record contains third party statements from Luc Alba Quijado de Acosta and Robert
24  Sandoval. She states she has known Miranda for many years. (Tr. 222) Lately, however, she
25  has noticed that Miranda has back pain, which limits his movement. *Id.* When she gave
26  Miranda a ride in her car, Miranda took a long time to get out. *Id.* Sandoval also states he has
27  known Miranda for many years. (Tr. 223) He explains Miranda now has difficulty walking,
28  which he believes is due to back pain. *Id.* He states Miranda now walks with a cane. *Id.*

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1  must move to the fifth step, which requires consideration of the claimant's RFC to perform
2  other substantial gainful work in the national economy in view of claimant's age, education, and
3  work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

4       In determining whether the claimant retains the ability to perform other work, the ALJ
5  may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20
6  C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846
7  F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional
8  requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d
9  1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based
10 on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a
11 valid basis for denying claims where they completely and accurately describe the claimant's
12 abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the
13 claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115
14 (9th Cir. 2006).

15      If the claimant has significant non-exertional limitations, the grids do not apply. *Penny*
16 *v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that
17 do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
18 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-
19 exertional limitations prevent the claimant from performing the full range of work in any
20 exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
21 *Id.* at 1341.

22

23      <u>The ALJ's Findings</u>

24      At step one of the disability analysis, the ALJ found Miranda "has not engaged in
25 substantial gainful activity since April 30, 2012, the alleged onset date . . . ." (Tr. 21). At step
26 two, he found Miranda "has the following medically determinable impairments: left shoulder
27 impairment, back impairment, and right arm/elbow impairment . . . ." (Tr. 21) He found,
28 however, that these impairments are not severe because they do not "significantly limit[] his

ability to perform basic work activities. . . . (Tr. 22)  Accordingly, he found Miranda was not disabled "from April 30, 2012 through the date of this decision. . . ." (Tr. 24)

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if she provides specific and legitimate reasons supported by substantial evidence

- 7 -

1 in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as
2 to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez*
3 *v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

### DISCUSSION

In this case, the ALJ rejected Miranda's application at step two of the disability analysis. The step two inquiry, however, is only "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight

1 abnormality that has no more than a minimal effect on an individual's ability to work. *Id.*
2 (punctuation modified).

3 Here, the ALJ acknowledged that Miranda suffered from shoulder and back impairment
4 serious enough to warrant surgery. He concluded, however, that these impairments were no
5 longer "severe" subsequent to his surgeries. Substantial evidence, however, does not support
6 his optimistic assessment of Miranda's post-surgical condition.

7 The ALJ's explanation of his reasoning is relatively brief. His analysis of Miranda's
8 shoulder impairment reads as follows:

> The claimant was doing well after surgery. An x-ray taken in September 2012 after the claimant's surgery showed no evidence of acute intraosseus injury. This indicates that the claimant's left shoulder impairment is non-severe.

11 (Doc. 23)

12 The reasons advanced by the ALJ do not constitute substantial evidence. The fact that
13 Miranda was doing well after surgery indicates that his condition would likely be improved by
14 the surgery. Without more, however, there is no way of knowing just how much improvement
15 Miranda would ultimately see. There is simply no evidence in the record that after surgery,
16 Miranda's shoulder impairment was no longer severe and he could return to his previous work
17 where he had to lift objects weighing 50 to 60 pounds. (Tr. 40, 189) In fact, the medical record
18 indicates to the contrary that Miranda continues to experience shoulder pain that is exacerbated
19 by lifting and movement. *See* (Tr. 352, 360, 424)

20 The fact that an x-ray revealed "no evidence of acute intraosseus injury" also is not
21 substantial evidence supporting the ALJ's decision. There is nothing in the record to support
22 the ALJ's assertion that a lack of "acute intraosseus injury" is evidence that Miranda no longer
23 suffered from a severe shoulder impairment. The ALJ is not qualified as a medical expert and
24 may not substitute his own lay judgment in place of an informed medical opinion. *See Day v.*
25 *Weinberger*, 522, F. 2d 1154, 1156 (9th Cir. 1975); *see, e.g.*, *Cox v. Colvin*, 2014 WL 6882390,
26 5 (C.D.Cal. 2014) ("Absent expert medical assistance, the ALJ could not competently translate
27 the medical evidence into a residual functional capacity assessment.").

28

1  The ALJ's analysis of Miranda's back impairment is similarly brief. He states simply
2 that "because there is little evidence following his surgery and because the surgery went well,
3 the claimant's back impairment is durationally nonsevere." (Tr. 23) The fact that the surgery
4 "went well," however, is not substantial evidence that Miranda's back impairment has been
5 reduced to "a slight abnormality" having "no more than a minimal effect" on his ability to work.
6 *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

7  The ALJ further notes that there is little evidence of Miranda's condition post surgery.
8 But if he believed the medical record was incomplete, the ALJ should have supplemented the
9 record, not simply deny the claimant's application at step two. *See Webb v. Barnhart*, 433 F.3d
10 683, 687 (9th Cir. 2005) ("[T]he ALJ had an affirmative duty to supplement Webb's medical
11 record, to the extent it was incomplete, before rejecting Webb's petition at so early a stage in
12 the analysis.").

13  The ALJ further argues that Miranda's record of daily activities supports his decision
14 denying benefits. He notes that Miranda is "able to clean around the house, go for walks, and
15 use public transportation." (Tr. 24) The ability to engage in these activities, however, is not
16 evidence that Miranda is completely recovered and can lift objects weighing 50 to 60 pounds
17 again.

18  In her brief, the Commissioner cites other aspects of the record that support the decision
19 of the ALJ. This court, however, may not affirm the decision of the ALJ by referring to
20 evidence that he did not discuss. *Burrell v. Colvin*, __ F.3d__, __, 2014 WL 7398892, 4 (9th
21 Cir. 2014); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

22  The court does not reach the claimant's alternate arguments for remand.

24  IT IS ORDERED that the final decision of the Commissioner is reversed. The case is
25 remanded for further proceedings.

26  The Clerk of the Court is directed to prepare a judgment and close this case.

28  DATED this 5th day of February, 2015.

- 10 -

1
2
3       _____
4              Leslie A. Bowman
               United States Magistrate Judge
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28